UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RONEY HARRIS,                )
        Appellant    )
                             )
v.                           ) C.A. NO. 09-cv-30215-MAP
                             )
HSBC BANK USA, N.A.,         )
as Trustee,                  )
        Appellee     )


MEMORANDUM AND ORDER REGARDING
BANKRUPTCY APPEAL AND
MOTION FOR LEAVE TO APPEAL
(Dkt. No. 3)

September 28, 2010

**PONSOR, D.J.**

I. INTRODUCTION

This bankruptcy appeal provides an example of how much confusion can ensue when a pro se litigant gets lost in a procedural ball of yarn. Being now in the position to untangle the snarl (to some extent), the court as a matter of prudence will remand the case to the very patient bankruptcy judge to insure the Appellant's rights are not lost as a result of his own inexperience.

Pro Se Appellant Roney Harris ("Harris" or "Appellant") has appealed the Bankruptcy Court's decision of November 9, 2009, denying his Motion to Reconsider an earlier order dismissing his adversary proceeding and lifting the automatic stay. He also seeks leave to appeal. (Dkt. No.

3.)  For the reasons stated below, the rulings of the Bankruptcy Court will be remanded for further consideration, and the Motion for Leave to Appeal will be denied as moot.

## II. FACTS AND PROCEDURAL BACKGROUND

In February 2006, Harris executed a note (the "Note") and received a loan from Fremont Investment & Loan ("Fremont").  To secure the loan, he signed a mortgage agreement (the "Mortgage") on property located at 83 Greentree Drive, Glastonbury, Connecticut (the "Property") to Mortgage Electronic Registration Systems, Inc. ("MERS"), in its capacity as nominee for Fremont.

About two and a half years later, in July 2008, Harris filed for bankruptcy under Chapter 7.  In June 2008 and then again in October 2008, MERS allegedly assigned to HSBC Bank USA, N.A. ("HSBC"), Appellee here, the Mortgage "together with the [N]ote described [therein] and the moneys due and to become due thereon."  (Dkt. No. 8, Bankruptcy Record, Exs. 27 and 9.)

On February 2, 2009, HSBC moved for relief from the automatic bankruptcy stay.  (Id., Ex. 20.)  The motion alleged that, after Harris had entered into the Mortgage Agreement with MERS as Fremont's nominee, both the Mortgage and the Note had been transferred to HSBC by assignment. (Id. ¶ 3.)

In February 2009, Harris initiated Adversary Proceeding No. 09-03008 ("the First Adversary Proceeding") alleging, <u>inter alia</u>, that HSBC lacked standing to participate in the bankruptcy proceeding. The intent behind the proceeding, it would appear, was to head off HSBC's motion for relief from the stay. The Bankruptcy Court granted HSBC's motion to dismiss this proceeding on April 23, 2009. Harris timely filed a motion for reconsideration of this ruling.

On August 25, 2009, while the motion for reconsideration was pending, HSBC withdrew its lift-stay motion with the explanation that "new counsel will be appearing on behalf of" HSBC. (<u>Id.</u>, Ex. 9.)

On August 28, 2009, HSBC filed a second motion for relief from the automatic stay. This second lift-stay motion failed to allege that HSBC was the holder or assignee of the Note. Significantly, the second motion also failed to include the Note or a copy of the Note as an exhibit. (<u>Id.</u>, Ex. 7.)

On August 31, 2009, Harris timely filed an Objection to Motion for Relief from Stay, arguing (as he had earlier) that HSBC had failed to demonstrate "standing to declare default and foreclose on a debt it does not own." (<u>Id.</u>, Ex. 6 ¶ 5.) However, Harris mistakenly filed this objection in the First Adversary Proceeding rather than the core

bankruptcy proceeding, and it appears that this objection might not have come to the Bankruptcy Court's attention.

On October 15, 2009, the Bankruptcy Court denied Harris's motion for reconsideration of its dismissal of the First Adversary Proceeding.  In its memorandum, the court declined to rule on Harris's argument that HSBC lacked standing to participate in the bankruptcy proceeding, noting that HSBC had withdrawn the first lift-stay motion and that the issue of standing was "hypothetical" in the absence of any pending lift-stay motion.  (Id., Ex. 5.)  The Bankruptcy Court did not address the second lift-stay motion by HSBC, which had been filed during the court's deliberations and was pending (along with Harris's objection) when the order issued.

On October 26, 2009, Harris filed Adversary Proceeding 09-03052 ("the Second Adversary Proceeding"), seeking, among other things, to oppose the second motion to lift the automatic stay.  (Id., Ex. 4 ¶¶ 47-48, 50-51.)

On October 29, 2009, the Bankruptcy Court granted HSBC's second lift-stay motion, noting that it had not been opposed. (Id., Ex. 3.)  This conclusion was technically correct since, although Harris did in fact vigorously oppose the motion, he had not made his opposition known in the proper procedural pigeon hole.  He had filed it in the

Second Adversary Action, rather than the core bankruptcy proceeding.

On November 3, 2009, Harris attempted to file a motion for reconsideration of both the Bankruptcy Court's October 29 order lifting the automatic stay and the October 15 order denying reconsideration of the order dismissing the First Adversary Proceeding.  Harris filed this motion for reconsideration in the Second Adversary Proceeding.  (Id., Ex. 2.)

On November 9, 2009, the Bankruptcy Court denied the motion for reconsideration, noting correctly that "the court has not dismissed [the Second Adversary Proceeding]."  (Id., Ex. 1.)[1]  The order did not specifically address Harris's request for reconsideration of the lift-stay order.

On November 19, Harris filed a Notice of Appeal with the Bankruptcy Court.  This appeal followed.[2]

---

[1] The Second Adversary Proceeding was ultimately dismissed on res judicata grounds on March 12, 2010.

[2] As noted, in addition to appealing, Harris has also sought "Leave to Appeal." (Dkt. No. 3.)  This motion is superfluous, since "[f]inal judgments, orders, and decrees" of the Bankruptcy Court are appealable as of right and without the approval of this court.  28 U.S.C. § 158(a)(1). "[A]n order lifting an automatic stay is an order disposing of a discrete dispute, and it is therefore final and appealable." Tringali v. Hathaway Machinery Co., 796 F.2d 553, 558 (1st Cir. 1986).  In general, an order denying a motion for reconsideration is also a final, appealable

On December 12, 2009, HSBC filed a motion to dismiss the appeal on the theory that it was not timely filed. On February 23, 2010, this court heard oral argument on that motion, and on February 24, 2010, the motion to dismiss was denied without prejudice. The merits of the appeal are now squarely before this court.

### III. DISCUSSION

Harris appeals the Bankruptcy Court's order of November 9, 2009, denying his motion to reconsider the order lifting the automatic stay. He argues that HSBC did not demonstrate sufficient interest in the property at issue to justify the Bankruptcy Court's lifting the automatic stay at HSBC's request -- specifically, that "[t]here is a break in the chain of assignments, and the current owner of the note is at issue." (Dkt. No. 3 ¶ 4.)

HSBC argues (1) that the appeal is untimely, (2) that claim preclusion bars Harris from opposing the relief from stay, and (3) that HSBC successfully demonstrated a colorable claim to the estate property.

A. **Standard of Review**.

---

order. Stone v. INS, 514 U.S. 386, 401 (1995) (analogizing an order denying reconsideration of a final deportation order to an order denying a motion under Fed. R. Civ. P. 60(b)). Accordingly, the Motion for Leave to Appeal will be denied as moot, and the court will proceed directly to adjudicate the appeal.

On a bankruptcy appeal, the district court reviews the bankruptcy court's legal determinations <u>de novo</u> and its factual determinations for clear error. Fed. R. Bankr. P. 8013; <u>In re CK Liquidation Corp.</u>, 343 B.R. 376, 380 (D. Mass. 2006) (citing <u>In re Healthco Int'l, Inc.</u>, 132 F.3d 104, 107 (1st Cir. 1997)).

Rule 59(e) of the Federal Rules of Civil Procedure is applicable to bankruptcy cases in which a motion for reconsideration is filed "no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023. Under Rule 59(e), a motion for reconsideration should be granted only where the relevant argument was raised before judgment issued. <u>Harley Davidson Motor Co., Inc. v. Bank of New England</u>, 897 F.2d 611, 616 (1st Cir. 1990). If a motion for reconsideration is to be allowed, the motion must establish either a "manifest error of law" or present newly discovered evidence. <u>Federal Deposit Ins. Corp. v. World University, Inc.</u>, 978 F.2d 10, 16 (1st Cir. 1992).

In general, a motion for reconsideration is reviewed for abuse of discretion. <u>See</u> <u>Appeal of Sun Pipe Line Co.</u>, 831 F.2d 22, 25 (1st Cir. 1987). This standard applies to orders by the Bankruptcy Court as well. <u>In re Tardugno</u>, 241 B.R. 777, 779 (B.A.P. 1st Cir. 1999).

B.  <u>Timeliness of the Appeal</u>.

To appeal an order of the Bankruptcy Court, an appellant must file notice of appeal within fourteen days of the date of the order appealed from. Fed. R. Bankr. P. 8002(a). Unless properly extended by the Bankruptcy Court, this fourteen-day period is mandatory and jurisdictional. In re Abdallah, 778 F.2d 75, 77 (1st Cir. 1985). For this appeal, the period was not extended, and the fourteen-day time limit governs.

Notice of this appeal was filed on November 19, 2009. HSBC argues that Harris seeks to appeal either the Bankruptcy Court's October 25, 2009 order (dismissing the First Adversary Proceeding) or the Bankruptcy Court's October 29, 2009 order (allowing HSBC's motion for relief from stay). The November 19 notice is not timely with respect to either order.

At oral argument before this court, however, Harris explained that he seeks to appeal the order of November 9, 2009, denying his motion for reconsideration of the dismissal of the First Adversary Proceeding and (sub silentio) his motion for reconsideration of the allowance of the lift-stay motion. The November 19 notice is timely with respect to the November 9 order.

HSBC argues that Harris's November 3 motion for reconsideration, as denied on November 9, cannot relate to

the lift-stay order because the motion for reconsideration (1) makes no more than "a cursory reference" to the stay and (2) was filed in an adversary proceeding rather than the underlying bankruptcy. (Dkt. No. 13, HSBC's Reply Brief 8.) Both arguments fail.

First, the references to the stay are not cursory. The first sentence of his motion reads as follows: "Now comes Plaintiff, Roney Harris, and moves this Court to reconsider its action to dismiss Plaintiff's Adversarial Proceedings, and its granting of Defendants' Motion to Lift Stay." (Dkt. No. 8, Bankruptcy Record, Ex. 2 at 1) (emphasis added). Harris's motion subsequently argues that "[HSBC's] proof does not even show who presently holds the note. That alone provides sufficient basis to deny the motion for relief from stay." (Id. ¶ 10.) This is sufficient to save his rights with respect to this appeal.

Second, "Pro se filings are held to a less stringent procedural standard than others." Nunnally v. MacCausland, 996 F.2d 1, 6 n.8 (1st Cir. 1993) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Harris appears pro se, and this court will interpret his submissions with the appropriate latitude. With that in mind, Harris's practice of frequently filing his papers in the wrong proceeding, while a serious impediment to the adjudication of his disputes,

should not prevent a court's consideration of any timely filed documents that appear on the record and that support Harris's appeal.

The court will therefore treat this appeal as a timely challenge to an order denying reconsideration of an order to lift the automatic bankruptcy stay.

C.  Issue Preclusion.

HSBC argues that, after October 15, 2009, issue preclusion barred Harris from contesting HSBC's claim to the property.  For issue preclusion to apply, three elements must be met: (1) the issue must be actually litigated, (2) there must be a full and final judgment, and (3) the determination must be essential to the judgment.  Jarosz v. Palmer, 766 N.E.2d 482, 486 (Mass. 2002).  HSBC argues that the issue of its claim to the property was actually litigated during the First Adversary Proceeding.  HSBC reasons that, because the Bankruptcy Court dismissed that proceeding, it had in effect found that HSBC "had standing to enforce the mortgage."  (Dkt. No. 13 at 10-11.)

However, in its Memorandum of Decision dismissing the First Adversary Proceeding, the Bankruptcy Court explicitly declined to make findings on that issue:

> Harris attacks HSBC's authority or standing . . .
> to prosecute its lien on his Connecticut property,
> but that contest can not be pursued in this
> Chapter 7 case, inasmuch as . . . HSBC has

-10-

> withdrawn its motion seeking relief from the automatic stay to foreclose on the property.

(Dkt. No. 8, Bankruptcy Record, Ex. 5 at 4.)  Because the Order of Dismissal makes no finding with respect to HSBC's standing to prosecute its claim to the property, the order lacks preclusive effect on that issue.

D.  <u>The Bankruptcy Court's Denial of the Lift-Stay Motion and the Motion for Reconsideration</u>.

   1.  <u>The Lift-Stay Motion</u>.

On a motion for relief from stay, the court must determine whether the moving party's claim to the property at issue is colorable.

> [A] court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. . . . If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere.

<u>Grella v. Salem Five Cent Sav. Bank</u>, 42 F.3d 26, 33-34 (1st Cir. 1994).  In this case, HSBC's claim to the Property is colorable only if HSBC has standing to bring a foreclosure action.  In Connecticut, the holder of a mortgage may not foreclose <u>unless</u> the mortgage holder holds or has been assigned the underlying note.  <u>Fleet Nat'l Bank v. Nazareth</u>, 818 A.2d 69, 71 (Conn. App. Ct. 2003) ("The plaintiff has failed to cite any authority, nor has our research found

any, to support its claim that it has standing to foreclose on the mortgage without ever having been assigned the note.").

Harris argues that HSBC lacks standing to bring a foreclosure action, offering the straightforward argument that HSBC cannot show that it was ever assigned the Note. If HSBC cannot plausibly explain how it was assigned the Note, then HSBC has no right to enforce the Note, no standing to foreclose on the mortgaged property, and hence no colorable claim to the estate property.

HSBC claims to have received the Note through assignment or transfer.[3]  (Dkt. No. 8, Bankruptcy Record, Ex. 7; Dkt. No. 13, Appellee's Reply Brief 8.)  An assignee who is not a holder may enforce a note under some circumstances.  However, there is no <u>presumption</u> of enforceability where the transferred note is issued in another's name.

> [T]here is no presumption . . . that the transferee, by producing the note, is entitled to payment.  The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed

---

[3] HSBC does not claim to be a holder of the Note.  A holder is one that takes a negotiable instrument by negotiation.  Conn. Gen. Stat. § 42a-3-201(a)(2010). Negotiation requires both transfer of physical possession and endorsement.  Conn. Gen. Stat. § 42a-3-201(b) (2010). There is no evidence on the record of endorsement to HSBC.

>     instrument by proving the transaction through
>     which the transferee acquired it.

Bank of N.Y. v. Gagnon, 2009 Conn. Super. LEXIS 1363 at *7 (Conn. Super. Ct. May 19, 2009) (quoting 11 Am.Jur.2d 582, Bills and Notes §214 (2009) (ellipses in original)).  In other words, an individual may be in possession of a note payable by its terms to some third party, but mere possession does not entitle the individual to collect on the note.  The individual has to provide some proof of how the note was acquired.

The Note states that it is payable to Fremont.  The record before the court contains scant evidence, if any, of any transaction through which HSBC was assigned the Note.  Significantly, the explanations that HSBC has advanced for its alleged entitlement are mutually contradictory.  In the first lift-stay motion, HSBC claimed that the Note was transferred from MERS to HSBC by assignment.  (Dkt. No. 8, Bankruptcy Record, Ex. 20.)  In the second lift-stay motion, HSBC failed to allege that it was the bona fide assignee of the Note at all.  (Dkt. No. 8, Bankruptcy Record, Ex. 7.)  In this appeal, HSBC's attorney proffers that HSBC acquired the Note when it was "securitized and pooled along with numerous other loans and held in trust" by HSBC.  (Dkt. No. 13, HSBC's Reply Brief 8.)

At this stage of the proceedings, HSBC has not proven

or even explained how it acquired the Note.  HSBC has therefore not demonstrated a colorable claim to the estate property.

    2.   <u>The Motion for Reconsideration</u>.

It appears from the confused record of this case that the Bankruptcy Court has not yet considered the substance of Harris's argument in support of reconsideration -- that HSBC cannot prove assignment of the Note.  Admittedly, this confusion seems to have resulted in large part from the deficiencies in Harris's presentation of his case.  His arguments -- both in writing and at the hearing -- were often disorganized and hard to follow.

Inartful as his pleadings were, though, Harris never waived, and indeed always adequately preserved, his argument that the Note's ownership had not been adequately substantiated.  He raised the issue in his opposition, his motion for reconsideration, and again on appeal.  He successfully preserved his rights and, in the Motion for Reconsideration, he made his argument with remarkable cogency:

> The question at issue is: Who held (or holds) the note and has standing to enforce it[?] . . . [T]he movant's proof does not even show who presently holds the note.  That alone provides sufficient basis to deny the motion for relief from stay, and to do other wise is a manifest error of law.

(Dkt. No. 8, Bankruptcy Record, Ex. 2, Motion to Reconsider

¶ 10.)

Of course, Appellee may well have a valid substantive argument in support of its position that it has standing to enforce the Note.  So far, however, it has never been required to present one.  Harris is therefore entitled to make his argument and have the issue addressed directly.

### IV. CONCLUSION

For the foregoing reasons, Appellant's Motion for Leave to Appeal (Dkt. No. 3) is hereby DENIED as moot, and the decision of the Bankruptcy Court of November 3, 2009, is hereby REVERSED and REMANDED for further proceedings.

It is so Ordered.

                                        /s/ Michael A. Ponsor
                                        MICHAEL A. PONSOR
                                        U. S. District Judge